RENDERED:  AUGUST 8, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0892-ME

M.D.                                                                                         APPELLANT


v.                    APPEAL FROM JEFFERSON CIRCUIT COURT
                      HONORABLE BRYAN D. GATEWOOD, JUDGE
                              ACTION NO. 12-J-503645-004


M.S.; A.D.-S., A CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                                          APPELLEES

AND


NO. 2024-CA-0893-ME

M.D.                                                                                         APPELLANT


v.                    APPEAL FROM JEFFERSON CIRCUIT COURT
                      HONORABLE BRYAN D. GATEWOOD, JUDGE
                              ACTION NO. 12-J-503645-005


M.S.; A.D.-S., A CHILD;
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; AND J.S.                                            APPELLEES

AND

NO. 2024-CA-0894-ME

M.D.                                                         APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE BRYAN D. GATEWOOD, JUDGE
ACTION NO. 12-J-503646-004


M.S.; A.D., A MINOR CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                             APPELLEES

AND

NO. 2024-CA-0897-ME

M.D.                                                         APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE BRYAN D. GATEWOOD, JUDGE
ACTION NO. 12-J-503647-004


M.S.; C.M.D., A CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                             APPELLEES

AND

NO. 2024-CA-0900-ME

M.D.                                                                                          APPELLANT


                              APPEAL FROM JEFFERSON CIRCUIT COURT
v.                          HONORABLE BRYAN D. GATEWOOD, JUDGE
                                  ACTION NO. 12-J-503647-005


M.S.; C.M.D., A CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                                           APPELLEES

AND


NO. 2024-CA-0902-ME

M.D.                                                                                          APPELLANT


                              APPEAL FROM JEFFERSON CIRCUIT COURT
v.                          HONORABLE BRYAN D. GATEWOOD, JUDGE
                                  ACTION NO. 15-J-502512-002


B.M.; B.E.D., A CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                                           APPELLEES

AND


NO. 2024-CA-0903-ME

M.D.                                                                                          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.      HONORABLE BRYAN D. GATEWOOD, JUDGE
ACTION NO. 12-J-503648-005


B.M.; A.D., A CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                APPELLEES

AND


NO. 2024-CA-0904-ME


M.D.                                        APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.      HONORABLE BRYAN D. GATEWOOD, JUDGE
ACTION NO. 22-J-502656-001


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND J.R.D., A
CHILD                                      APPELLEES

AND


NO. 2024-CA-0906-ME


M.D.                                        APPELLANT

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND M.D., A
CHILD                                                    APPELLEES

OPINION AND ORDER
DISMISSING APPEAL
NOS. 2024-CA-0892, 2024-CA-0893,
2024-CA-0894, 2024-CA-0897,
2024-CA-0900, 2024-CA-0902, AND 2024-CA-0903,
AND REVERSING, REMANDING, AND VACATING
APPEAL NOS. 2024-CA-0904 AND 2024-CA-0906

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND L. JONES, JUDGES.

ECKERLE, JUDGE:  These appeals arise from consolidated dependency/neglect/abuse ("DNA") actions in the Jefferson Family Court that removed seven children of Appellant, M.D. ("Mother"), and placed them in the custody of Appellee, the Cabinet for Health and Family Services (the "Cabinet"). We first conclude that Mother failed to file timely notices of appeal in Appeal Nos. 2024-CA-0892-ME, 2024-CA-0893-ME, 2024-CA-0894-ME, 2024-CA-0897-ME, 2024-CA-0900-ME, 2024-CA-0902-ME, and 2024-CA-0903-ME.  Furthermore,

Mother failed to file timely motions for extensions of time to file those appeals. As a result, we must dismiss those appeals.

In the remaining appeals, Mother argues that the Family Court failed to ensure that the dispositional matters were resolved within the 45-day period allowed by Kentucky Revised Statute ("KRS") 620.090(5), and that the Family Court made written findings waiving that period. It is without dispute that the Family Court failed to make the requisite findings. Mother clearly and repeatedly contested the issues of custody removal, return, and increased visitation. There can be no implied waiver under these circumstances. The Family Court's findings of educational neglect are also lacking in substantial evidence, as the two children in the non-dismissed appeals were under the age required to attend school. Hence, we must reverse the Family Court's dispositional orders regarding those children.

Finally, Mother contends that the Family Court erred by imposing sanctions for contempt. While Mother does not challenge the Family Court's findings that she willfully disobeyed court orders, the Family Court exceeded the scope of civil contempt by imposing a criminal sentence without affording her an opportunity to purge the contempt. Hence, we must also vacate the Family Court's imposition of sanctions for contempt.

## I.  Factual and Procedural History

The underlying matters have an extensive and convoluted factual and procedural history.  But for purposes of these appeals, the following facts are relevant.  On March 21, 2022, the Jefferson County Attorney, on behalf of the Cabinet, filed petitions for an emergency custody order ("ECO") for each of the six children Mother had at the time: A.D.-S. ("Child 1"), age 16; A.D. ("Child 2"), age 14; C.D. ("Child 3"), age 13; A.D. ("Child 4"), age 10; B.D. ("Child 5"), age 9; and J.D. ("Child 6"), age 6.  The petitions each alleged that, on March 2, 2022, Child Protective Services ("CPS") received a report that Mother was involved in a high-speed police chase beginning in Indiana and ending in Kentucky with Child 6 in the automobile.  The petitions stated that Mother was arrested and charged with first-degree wanton endangerment, first-degree fleeing or evading police, reckless driving, disregarding a traffic-control device, and resisting arrest.  After a couple of weeks, Mother was released from jail on March 9, 2022.

On further inquiry, the Cabinet found that all of the children had significant absences from school attendance during the 2021-2022 school year.  Child 1 had 56 unexcused absences; Child 2 had 46 unexcused absences; Child 3 had more than 88 unexcused absences; Child 4 had 52 unexcused absences; and Child 5 had 36 unexcused absences.  In addition, Child 6 had not been enrolled in

public school that year. Mother claimed that Child 6 had been enrolled in private school but did not provide the name of the school she was allegedly attending.

The petitions also voiced concerns for the welfare of the children due to the home environment. CPS investigated and reported that the family lived in a 3-bedroom duplex, and the children had no beds, couch, chairs, or table. The home was filthy, with trash on the floor of the home, sheets hung over the windows, and a toilet that did not flush properly. CPS also found that the children and their clothes were dirty, and several of the children had urinated on themselves. There were reports that Mother was likely suffering from mental-health issues. The petitions related Mother's history with CPS, which dated back to 2012, and included "substantiated basic neglect and medical neglect." Child 4 had been removed from Mother's custody due to a finding of medical neglect. Mother also had a significant criminal history dating back to 2008. The petitions concluded that the "children are a continued risk of neglect and possible injury in the mother's care at this time."

The Family Court granted the ECOs on March 22, 2022. Shortly thereafter, the Cabinet filed six DNA petitions based on the same allegations. The Family Court appointed an attorney for Mother and conducted a temporary removal hearing on March 24, 2022. Following that hearing, the Family Court placed all six children in the temporary custody of the Cabinet.

The Family Court set a pre-trial conference for April 21, 2022. At that hearing, Mother made a motion, *pro se*, to review the placement. The Family Court determined that placement would remain with the Cabinet and set another pre-hearing conference. The Family Court also appointed a Court Appointed Special Advocate ("CASA") volunteer and a Guardian *ad litem* ("GAL") for each child and ordered a psychological evaluation for Mother.

On May 2, 2022, Mother filed another motion, *pro se,* for increased visitation. The Cabinet responded with a motion to suspend Mother's supervised visitation pending her Court-ordered psychological evaluation. The Cabinet also noted Mother's failure to comply with the conditions of her supervised visitation.

At a hearing on May 12, 2022, the Family Court noted that Mother had been incarcerated on new charges. Consequently, the Family Court denied Mother's motion for increased visitation and granted the Cabinet's motion to suspend supervised visitation.

The Family Court renewed these orders at the next hearing on June 16, 2022. The Family Court also gave temporary custody of Child 1, Child 2, and Child 3 to the paternal grandmother. At a subsequent hearing on the August 24, 2022, hearing, the Cabinet reported that Mother had completed her psychological evaluation in two sessions but had been uncooperative with several assessments. The GAL moved to continue the suspension of supervised visitation due to

Mother's failure to comply with the evaluation and other negative behavior around the children, their medical providers, and school employees. The Family Court also granted the GAL's motion for a no-contact order.

In September 2022, Mother's counsel filed a motion to resume visitation. The Cabinet filed a motion to hold Mother in contempt for her improper contact with the paternal grandmother and with school employees. Following a hearing on September 29, 2022, the parties agreed to hold all pending motions in abeyance until the pending October 22, 2022, trial date.

Yet, two weeks later, on October 14, 2022, the Cabinet advised the Family Court that Mother had interfered with the placement of Child 1, Child 2, and Child 3 with the paternal grandmother. In response, the Family Court granted Mother's counsel's motion to withdraw, appointed new counsel for Mother, continued the pending hearing, and granted the Cabinet's motion to change the placement of Child 1, Child 2, and Child 3 to foster care.

Prior to the scheduled trial date of December 8, 2022, Mother filed a motion to recuse the Family Court Judge, which he denied. On further motion by Mother's counsel, the Family Court passed the trial date to February 9, 2023.

However, yet again, the trial did not go forward on that date. The Family Court appointed a GAL for Mother due to concerns about her mental stability. The Family Court again passed the trial date to April 27, 2023.

-10-

Before the trial could occur, on February 19, 2023, Mother gave birth to M.D. ("Child 7"). Two days later, the Cabinet sought an ECO on Child 7's behalf. In addition to the pending criminal matters against Mother and the prior DNA petitions, the petition alleged that Mother was displaying psychotic and violent behaviors in the hospital. The Family Court granted the ECO the same day, placed temporary custody of Child 7 with the Cabinet, and scheduled a removal hearing for February 24, 2024. Following that hearing, the Family Court continued the placement of Child 7 with the Cabinet.

On March 9, 2023, the Family Court conducted a pre-trial conference for Child 7 and an Annual Review for Child 4, Child 5, and Child 6. The Cabinet reported that Mother was still not fully compliant with the Family Court's orders, including the no-contact orders, and was uncooperative with her case plan. Several criminal charges against Mother remained pending. The Family Court continued all pending matters to the trial on April 27, 2023.

On that date, once again the trial did not go forward. Mother's counsel filed a motion to withdraw, and Mother requested additional time to hire an attorney. The Family Court granted both motions.

On June 21, 2023, the Cabinet renewed its motion for contempt, alleging that Mother had repeatedly violated the no-contact order, and worse still,

-11-

had absconded with Child 1 and Child 2. On June 29, 2023, Mother's new counsel requested a continuance, which the Family Court granted.

The Family Court conducted another hearing three months later, on September 28, 2023. Mother was not present. Following that hearing, the Family Court issued its findings in a written order entered on October 3, 2023. Based upon the evidence presented and previously in the record, the Family Court found that Mother placed all seven of the children at risk of abuse and neglect. The Family Court specifically noted Mother's extensive criminal history, including the high-speed chase that initiated the petitions. The Family Court detailed Mother's failure to ensure that the children attended school, her violent and erratic behaviors, and her repeated failures to comply with Court orders.

In addition to its abuse findings, the Family Court also found Mother in contempt for substantiated and repeated violations of its no-contact orders. The Family Court noted that, during prior hearings, Mother had expressly stated that she had no intention of complying with Court orders. The Cabinet advised the Family Court that, in August 2023, Child 3, Child 5, and Child 6 were removed from their foster care placements and could not be located. Child 1 and Child 2 remained missing, as it had reported on June 21, 2023. The Cabinet stated that it believed that Mother was with the children, as she had posted online several videos of herself with them. Criminal charges against Mother for custodial interference

remained pending. The Family Court issued a contempt finding against Mother, concluding that her violations of Court orders were brazen and repeated,

Ten days later, on October 13, 2023, Mother's counsel filed motions to alter, amend, or vacate these orders pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05. Mother's counsel asserted that the findings of fact were erroneous and did not support committing the children to the Cabinet. Mother's counsel also alleged that the Family Court's contempt findings exceeded the proper scope of civil contempt. Finally, Mother's counsel alleged that the Family Court had erroneously found that Child 7 was abused, noting that child was removed from her custody shortly after birth.

Two months later, and with no accounting of the whereabouts of Mother or most of her children, the Family Court denied the motions to vacate the abuse findings by written order entered on December 13, 2023. However, the Family Court agreed that it had failed to provide Mother with an opportunity to purge herself of the contempt. Thus, the Family Court deferred sentencing on the contempt and directed the Cabinet to investigate, provide information, and make recommendations on the proper steps for Mother to purge herself of contempt.

Two months later still, on February 8, 2024, the Cabinet provided a report to the Family Court for the annual dispositional review. The Cabinet noted that Child 1 had reached the age of majority. The Cabinet was still not aware of

the locations of Child 2, Child 3, Child 5, and Child 6, other than they were in Mother's possession, whose whereabouts were still unknown. Child 4 and Child 7 remained in their placements.

Three months later, on May 23, 2024, the Family Court conducted its final dispositional hearing and sentencing on contempt. By this time, Mother had been arrested on a separate warrant. She remained incarcerated on numerous criminal charges, including kidnapping and custodial interference. The Cabinet advised that the four missing, minor children had been located, and all had been returned to the Cabinet's physical custody. All of the children had behavioral issues and were behind on their education. Accordingly, the Cabinet changed its permanency goal from reunification to adoption. But the Cabinet did not request that the Family Court change the permanency goal.

Based upon all of the evidence, the Family Court entered a formal dispositional order committing the younger six children to the Cabinet. On the contempt order, the Family Court sentenced Mother to serve 180 days in jail. These appeals followed. Additional facts will be set forth below as necessary.

## II.   Cabinet's Motions to Dismiss Appeals as Untimely

As an initial matter, the Cabinet moves to dismiss seven of Mother's nine appeals as she failed to file them timely. The final judgments in the underlying cases were entered on May 23, 2024. Thus, Mother had 30 days, or

-14-

until June 24, 2024, to file her notices of appeal. Kentucky Rule of Appellate Procedure ("RAP") 3(A)(1). Mother filed her notices in Nos. 2024-CA-0904-ME and 2024-CA-0906-ME on that date. However, Mother did not file her notices of appeal in the remaining seven appeals until the following day, June 25.

Apparently realizing her error, one month later, on July 26, 2024, Mother filed a motion with the Family Court, pursuant to RAP 3(D), to extend the time for filing an appeal. But as the appeal was already before this Court, on July 29, 2024, this Court issued orders directing Mother to show cause why her appeals should not be dismissed as untimely.

Thirty days after our orders, on August 29, 2024, the Family Court granted Mother's motion for an extension. It issued an order *nunc pro tunc*, which is usually reserved to correct clerical errors, making the effective date August 8, 2024.

Given the gravity of the issue, on November 20, 2024, the motion panel of this Court passed the issue of timeliness to this merits panel. In the ensuing briefing, the Cabinet again argued that Mother's notices of appeal were untimely, and that her belated motions were ineffective to extend the time allowed for filing an appeal. In response, Mother contended that the Cabinet waived the delay by failing to object to the Family Court's entry of the order extending the time for filing the appeal.

-15-

Under well-established Kentucky law and rules, "The timely filing of a notice of appeal is jurisdictional." RAP 2(A)(2). "Without the properly filed notice of appeal, the appellate court lacks jurisdiction to consider the matter." *Cabinet for Health and Fam. Servs. v. D.W.*, 680 S.W.3d 856, 860 (Ky. 2023) (citation omitted). "There is no substantial compliance rule with timely filing a notice of appeal, and the mandatory application of the rule applies even when the appealing party makes a good faith effort to file the notice of appeal." *Id.* (internal quotation marks and citation omitted). "Our review of a defect in a notice of appeal regarding its timely filing is essentially *de novo*." *Id.*

RAP 3(D) allows for an extension of time for appeal as follows:

> Upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment or an order which affects the running of the time for taking an appeal, the trial court may extend the time for appeal, not exceeding 10 days from the expiration of the original time. This is in addition to any other remedies that may be available, including but not limited to, relief available pursuant to CR 60.02, and any relief recognized by case law or other rule.

The Cabinet takes the position that the Family Court only had the authority to grant an extension of time if Mother's motion was filed not more than ten days from the expiration of the original time – that is, within 40 days from entry of the final and appealable order. This interpretation is supported by the holding of the Kentucky Supreme Court in *James v. James*, 313 S.W.3d 17 (Ky.

-16-

2010) (interpreting identical language contained in former CR 73.02(1)(d)). In *James*, the Supreme Court held that the Trial Court retained jurisdiction to grant the extension of time more than 40 days after finality, as long as the appellant filed the notice of appeal **and** the motion for extension of time within that period. *Id.* at 22-23.

Here, Mother filed her *notices* of appeal within the 40-day period, but she did not file her *motions* for extension of time until more than 40 days after the judgments became final. It is clear that "an extension of time must be sought within 40 days from the date upon which the time for the taking of the appeal began to run[.]" *Id.* at 23 (citing *Rodgers v. Henderson*, 612 S.W.2d 743, 744 (Ky. App. 1980)). Because Mother undisputedly failed to file her motion for an extension of time within the 40-day period, some of these appeals are clearly untimely. This Court lacks jurisdiction to consider the merits of her untimely appeals. Consequently, "[t]he failure of a party to file timely a notice of appeal . . . shall result in a dismissal or denial." RAP 2(A)(3).

As a result, Mother's appeals of the dispositional rulings concerning Child 1, Child 2, Child 3, Child 4, and Child 5 must be dismissed.[1] Accordingly, we will not address any issues relating exclusively to those children.

---

[1] As previously noted, Child 1 turned 18 prior to the Family Court's entry of the dispositional order relating to her, and she was not re-committed to the care or custody of the Cabinet. Thus, even if Mother's appeals in that case were timely, the matter is moot, as any ruling by the Court

However, Mother's appeals of the dispositional rulings concerning Child 6 and Child 7 were timely filed and are properly raised on appeal. In addition, the Family Court entered its contempt order under all nine case numbers. Therefore, the contempt issue is properly before this Court.

## III. Dispositional Orders Concerning Child 6 and Child 7

Mother argues that the Family Court erred by proceeding forward without any waiver of the 45-day requirement of KRS 620.090(5), which provides:

> The child shall remain in temporary custody with the cabinet for a period of time not to exceed forty-five (45) days from the date of the removal from his home. The court shall conduct the adjudicatory hearing and shall make a final disposition within forty-five (45) days of the removal of the child. The court may extend such time after making written findings establishing the need for the extension and after finding that the extension is in the child's best interest.

In this case, the Family Court failed to make written findings establishing the need for an extension beyond 45 days after entry of the temporary custody orders. The statute is a mandate that cannot be disregarded.

To aid Family Courts in making timely findings, the very form document for the dependency calendar includes a designated box to check whether the 45-day rule has been waived. But over a long period of time and many Court

---

cannot have any practical legal effect on a then-existing controversy. *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014).

-18-

hearings and pre-trial conferences, the Family Court regularly neglected to take the simple action of checking either the "yes" or "no" box. More important, the Family Court failed to make the required findings that an extension was necessitated. Further, the Family Court did not find that the extensions were in the best interests of the children. These consistent errors are significant and fatal. The temporary order of custody was not lawfully extended.

Mother concedes that she never brought this specific, box-checking error to the attention of the Family Court. As a general rule, when a party fails to raise an issue or otherwise preserve an allegation of error for review, the issue is forfeited. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 314 (Ky. 2023). However, here, Mother made specific motions contesting the merits of the temporary removal ruling. She explicitly requested both the return of her children and for increased visitation. Persons without counsel litigating in *pro se* are held to less stringent standards than lawyers in drafting formal pleadings. *See Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). She thus effectively and consistently challenged the merits of the temporary removal and extension. She fought for every one of these children, and she even tried to appeal for each of them. These direct efforts were sufficient to overcome any forfeiture by presumption or waiver by implication.

-19-

And Mother's attempts to regain her children were substantive. The neglected box-checking procedure is secondary to the purpose of the 45-day statutory requirement. Forms are provided not just for convenience and routine, but they are crafted to ensure that Judges are prompted to make required findings in crowded, stressful dockets. The real problem (that the forms exist to avert) lies in the failure of the Family Court here to note that the initial removal of the child from the home is temporary by nature and design. If it is to be extended for more than 45 days, judicial action and findings are both required. As the statute mandates: there must be written findings for an extension, the extension must be necessary, and the extension must be in the child's best interest. KRS 620.090(5). Mother challenged the merits of both the need for the extension and continued removal as in her children's best interest. The Family Court did not make the required written findings to justify extending the removal of the children from their Mother.

Under the circumstances, we cannot conclude that these fundamental errors were harmless. We must emphasize that we would prefer such a conclusion here. These children were placed in the Cabinet's care due to Mother's inability to provide a safe and supportive home for them. But we cannot lawfully so find here.

It would have been very easy for the Family Court to grant an extension because Mother repeatedly failed to comply with the conditions of her

case plan and interfered actively with the children's placements.  And Mother's ongoing erratic and criminal behavior appears to have demonstrated a basis for granting an extension of the temporary placements as being in the children's best interests.  *However, the Family Court made no such finding.*  It did not even check a single box, despite having multiple opportunities to do so and over a significant period of time.  And such a finding is required to remove children from the custody of their parents for more than a temporary, 45-day period of time, as it should be.  We acknowledge the burdens and stress of the Family Courts.  And we are certain that the Family Court wishes that it had proceeded differently.  But we cannot change the facts on appeal, and we cannot make findings for the Trial Courts.  We are simply not permitted to condone the Family Court's failure to address legally-required, statutory mandates.  Thus, there was no waiver of the 45-day requirement here, and the continued removal of Child 6 and Child 7 must be reversed.

The Cabinet is of course free to file future petitions and ECOs should the children remain at risk, which appears almost inevitable.  And to be clear, we share concern for the health and safety of these children.  But apprehension of the future does not allow Courts to decline to render difficult rulings according to law.  We cannot insert ourselves at the appellate level to create a finding of an extension where there simply was none at the trial level.

In light of this holding, the remainder of the appeal appears moot. The allegations of abuse for Child 7 due to Mother's violence towards hospital staff and Child 6 due to the car chase may properly be the subject of future proceedings before the Family Court.

Nonetheless, for clarity and to avoid needless future litigation, we will briefly address Mother's valid challenge to the Family Court's findings of educational neglect. The Family Court's findings of fact in a DNA action "shall not be set aside unless clearly erroneous." *M.C. v. Cab. for Health & Fam. Servs.*, 614 S.W.3d 915, 921 (Ky. 2021) (quoting CR 52.01). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person." *Id.* (quoting *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005)). Here, Child 6 (as well as Child 7) was under the age of five and thus not required to attend school at the time of removal. Consequently, alleged excessive absences from a school that Child 6 could not attend were not a sufficient basis for the Family Court's finding of educational neglect, and we would have reversed that finding on its own if we were not reversing on other grounds. *Commonwealth v. H.K.*, 595 S.W.3d 498, 500-01 (Ky. App. 2019).

## IV. Contempt Issues

Finally, Mother appeals from the Family Court's September 28, 2023, order finding her in contempt and its order, dated May 24, 2024, sentencing her to serve 180 days in jail at the Louisville Metro Department of Corrections for contempt. In *Cabinet for Health and Family Services v. J.M.G.*, 475 S.W.3d 600 (Ky. 2015), the Kentucky Supreme Court extensively discussed the nature and scope of a Court's contempt authority. The Supreme Court first defined contempt as "the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Id.* at 610 (quoting *Poindexter v. Commonwealth*, 389 S.W.3d 112, 117 (Ky. 2012) and *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996)). All Courts have the authority to sanction contempt and to insist upon respect for its processes and compliance with its rulings and judgments. *Id.* at 611 (citations omitted). Thus, the power of Courts to punish contempt is implicit in the judicial function and "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *Id.* at 611 (citations omitted).

Mother does not contest the Family Court's findings that her actions amounted to willful disobedience of its orders. Rather, Mother contends that the Family Court improperly sentenced her to serve 180 days in jail without affording

-23-

her an opportunity to purge herself of contempt. Consequently, Mother asserts that the Family Court exceeded the proper scope of civil contempt.

In *J.M.G.*, the Supreme Court discussed the distinction between civil and criminal contempt. Generally, sanctions imposed to benefit an adverse party – coercive or compensatory – are deemed civil and are sought and imposed through civil proceedings between the original parties, very often as part of the underlying cause. *Id.* (citations omitted). On the other hand, punitive sanctions – unconditional sanctions not subject to purgation through compliance with an order and that are imposed principally if not purely to vindicate the authority of the Court – are deemed criminal. *Id.* Criminal penalties for contempt require the full range of constitutional due process protections. *Id.* at 611-12. Furthermore, indirect contempt – that is, contempt occurring out of Court or not immediately apparent to the Court – requires an evidentiary hearing. *Id.* at 612. Summary adjudication of indirect contempt is prohibited. *Id.*

During the September 28, 2023, hearing, and at the subsequent hearing on December 13, 2023, the Family Court stated that it intended its contempt order to be civil in nature. Indeed, after the September 28, 2023, hearing, the Family Court stated that Mother could purge herself of the contempt by appearing before the court and producing the children if she had them. However, the Family Court never imposed a sanction on Mother until it was too late for her

-24-

to purge.  Thus, the Family Court essentially converted its civil contempt order into criminal contempt without affording Mother the full range of due process.  *See Jefferson v. Eggemeyer*, 516 S.W.3d 325, 343 (Ky. 2017).  Therefore, the Family Court's order imposing sanctions must be vacated.

Finally, sanctions in civil contempt cases are generally either coercive, compensatory, or remedial.  *J.M.G.*, 475 S.W.3d at 611.  Because there are no other sanctions to coerce or remedy Mother's non-compliance, the Family Court abused its discretion by imposing jail time.  Thus, we must vacate the order imposing incarceration as a penalty.

## V.    Conclusions and Order

Accordingly, with regard to Mother's appeals in Appeal Nos. 2024-CA-0904-ME and 2024-CA-0906-ME, we reverse and vacate.  We reverse the continued removal of Child 6 and 7 because the Family Court did not issue any valid extension of the 45-day temporary removal.  We also reverse the dispositional orders of the Jefferson Family Court finding Child 6 and Child 7 to be at risk of educational neglect as they were too young to be required to attend school.  While we agree with the Family Court's finding that Mother's actions amounted to willful violations of the Court's orders, we vacate the Family Court's orders imposing incarceration on Mother without affording her any due process or the opportunity to purge what should have been a civil, and not criminal, contempt.

Finally, it is HEREBY ORDERED that Mother's appeals in Appeal Nos. 2024-CA-0892-ME, 2024-CA-0893-ME, 2024-CA-0894-ME, 2024-CA-0897-ME, 2024-CA-0900-ME, 2024-CA-0902-ME, and 2024-CA-0903-ME are DISMISSED as having been untimely filed and leaving this Court with no jurisdiction over them.

ALL CONCUR.


ENTERED:  August 8, 2025

JUDGE, COURT OF APPEALS


BRIEF FOR APPELLANT M.D.:

Betthanni Forbush-Moss
Louisville, Kentucky

BRIEF FOR APPELLEE
CABINET FOR HEALTH AND
FAMILY SERVICES:

Michael J. O'Connell
Jefferson County Attorney

David A. Sexton
Assistant Jefferson County Attorney
Louisville, Kentucky